IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ~~ D.C.

05 AUG -1 AM 10: 51

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2:05-cr-20205-1 Ml |
| CHRIS NEWTON and CHARLES LOVE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PROPER VENUE OR, ALTERNATIVELY, TO TRANSFER CASE

---

Before the Court is Defendant Chris Newton's Motion to Dismiss for Lack of Proper Venue or, Alternatively, to Transfer Case, filed July 7, 2005. The United States filed a response on July 18, 2005. The Court held a telephone conference on July 25, 2005, during which both parties further argued their respective positions.[1] For the following reasons, Defendant's motion is DENIED.

## I. BACKGROUND

On May 25, 2005, Defendant Chris Newton ("Rep. Newton"), an elected member of the Tennessee House of Representatives, was indicted along with alleged co-conspirator Charles Love in a two-

---

[1] During the parties' telephone conference, counsel for Defendant Charles Love indicated that Mr. Love had no position regarding the instant motion and that Mr. Love would not be filing a motion to transfer venue.

This document entered on the docket sheet in compliance with Rule 55 and/or 32(b) FRCrP on _8-1-05_

41

count indictment charging them with conspiracy to commit extortion under 18 U.S.C. § 1951 and conspiracy to commit theft or bribery under 18 U.S.C. § 666 and 18 U.S.C. § 371.  According to the United States, Rep. Newton's arrest was a result of "Operation Tennessee Waltz," an investigation directed by the United States Attorney's Office for the Western District of Tennessee and executed by agents of the Federal Bureau of Investigation based in Memphis, Tennessee.  (Ans. of the United States to Def.'s Mot. to Dismiss Indictment or, in the Alt., to Transfer the Case at 3.)  That operation involved the investigation of numerous public officials located both in the Western and Eastern Districts of Tennessee, and included electronic surveillance pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* ("Title III") (Id.)  The electronic surveillance was monitored in the Western District of Tennessee and all recordings were secured and sealed in the Western District of Tennessee. (Id.)

According to the indictment, the Federal Bureau of Investigation set up and operated an undercover business named E-Cycle Management, Inc. ("E-Cycle"), to respond to allegations of corruption by elected officials. (May 25, 2005, Indictment (Docket No. 1) at 2, ¶ 6.)  E-Cycle was purportedly in the

2

business of obtaining and disposing of outdated electronic equipment. (Id.)

Count I of the indictment alleges that Rep. Newton conspired with Mr. Love to obtain $4,500 in illegal payments in exchange for influencing Rep. Newton's performance of his duties as a member of the Tennessee House of Representatives. (Id. at 3.) The indictment specifically alleges that Mr. Love would represent to certain individuals, including individuals associated with E-Cycle, that he had influence over and had collected money for certain members of the Tennessee General Assembly who could be influenced to vote for legislation beneficial to E-Cycle. (Id. at 3-4.) The indictment further alleges that, as a part of the conspiracy, Mr. Love introduced E-Cycle representatives to Rep. Newton, who would co-sponsor, support and vote for legislation beneficial to E-Cycle in exchange for illegal payments of money. (Id. at 4.)

Count II of the indictment alleges that Rep. Newton and Mr. Love conspired to profit financially by demanding and accepting money in exchange for Rep. Newton's support in advancing legislation beneficial to E-Cycle. (Id. at 8.) In particular, the indictment alleges that it was the object of the conspiracy for Mr. Love to put Rep. Newton in contact with representatives of E-Cycle and for Mr. Love to communicate demands for cash from Rep. Newton to E-Cycle representatives. (Id.) Cash given to Mr.

3

Love and Rep. Newton was allegedly intended to influence and reward Rep. Newton for his support of legislation benefitting E-Cycle which would result in E-Cycle gaining business with the State of Tennessee. (Id.)

With respect to each count, the indictment alleges numerous identical overt acts in furtherance of the conspiracies alleged. In particular, the indictment alleges that, on or about July 30, 2004, Mr. Love had a telephone conversation with an E-Cycle representative whereby he indicated that he could deliver cash to Rep. Newton. (Id. at 4, ¶ 1.) On or about August 20, 2004, Mr. Love met with E-Cycle representatives in Memphis, Tennessee, and indicated that E-Cycle would get more attention concerning the legislation that it wished to have passed if it had "gifts to bear" and that he had worked in the past "bearing gifts" to legislators including Rep. Newton. (Id. at 4, ¶ 2.) Mr. Love further indicated that he would need approximately $15,000 to pay those legislators, and that Rep. Newton would need more money than some others. (Id.)

The indictment goes on to allege that, on or about September 8, 2004, Mr. Love and a representative from E-Cycle met with Rep. Newton in Chattanooga, Tennessee, to discuss payments to Rep. Newton. (Id. at 4, ¶ 3.) On or about September 12, 2004, Mr. Love had a telephone conversation with an E-Cycle representative during which the E-Cycle representative indicated that he would

4

fax a copy of proposed legislation to Rep. Newton that E-Cycle wished to sponsor and that he would speak to Rep. Newton the next day. (Id at 5, ¶ 4.) During that conversation, Mr. Love indicated that Rep. Newton would probably need $1,500 to support the bill. (Id.)

The indictment further alleges that on or about September 14, 2004, Mr. Love received a wire transfer of $6,500 from the Western District of Tennessee to his bank account in Chattanooga, Tennessee. (Id. at 5, ¶ 5.) Also on or about that date, Mr. Love had a conversation with an E-Cycle representative where he indicated that he would be going to see Rep. Newton and acknowledged that Rep. Newton would receive $1,500 for supporting E-Cycle's legislation. (Id. at 5, ¶ 6.) On or about September 16, 2004, Mr. Love and an E-Cycle representative met in Chattanooga, Tennessee, whereby Mr. Love told the E-Cycle representative that he had met with Rep. Newton the previous day, that Mr. Newton would co-sponsor the bill that E-Cycle wished to have passed, that Rep. Newton had received a $750 payment, and that he was due another $750 payment. (Id. at 5, ¶ 7.) On or about that same date, Rep. Newton met with an E-Cycle representative in Cleveland, Tennessee, where he acknowledged that he had spoken to Mr. Love concerning the legislation that E-Cycle wished to have passed and that Mr. Love was "taking care" of him.

On or about September 17, 2004, the indictment alleges that
Mr. Love had a telephone conversation with an E-Cycle
representative during which he indicated that he had met with
Rep. Newton and given him the remaining $750 of the $1,500
payment. (Id. at 6, ¶ 9.)  On or about September 24, 2004, Mr.
Love spoke with an E-Cycle representative and indicated that E-
Cycle needed to give Rep. Newton more money. (Id. at 6, ¶ 10.)
On or about September 28, 2004, Mr. Love spoke to an E-Cycle
representative and indicated that he needed $1,000 for Rep.
Newton. (Id. at 6, ¶ 11.)  On or about October 12, 2004, Mr. Love
traveled to Memphis, Tennessee to meet with an E-Cycle
representative, who gave Mr. Love an envelope bearing the
initials "C.N." and containing $1,000 for Rep. Newton. (Id. at 6,
¶ 12.)

On or about October 13, 2004, the indictment alleges that
Mr. Love and Rep. Newton met in Cleveland, Tennessee with an E-
Cycle representative. (Id. at 6, ¶ 13.)  At that meeting, Rep.
Newton possessed an envelope similar to that described in
paragraph 12 of the indictment. (Id.)  During that meeting, Rep.
Newton and the E-Cycle representative discussed the bill which E-
Cycle wished Rep. Newton to sponsor in the Tennessee House of
Representatives. (Id. at 6-7, ¶ 13.)  On or about November 19,
2004, Rep. Newton met with an E-Cycle representative in
Cleveland, Tennessee, during which the details of proposed

legislation were discussed. (Id. at 7, ¶ 14.)  On or about January 13, 2005, Rep. Newton filed House Bill Number 0038 – the bill which was to benefit to E-Cycle.

## II. ANALYSIS

Rep. Newton contends that his indictment should be dismissed for improper venue or, in the alternative, that this case should be transferred to the Eastern District of Tennessee, because the indictment does not allege that Rep. Newton committed any criminal acts within the Western District of Tennessee.  The United States contends that venue is proper in the Western District of Tennessee because certain overt acts in furtherance of the alleged conspiracies took place in the Western District of Tennessee.  The Court will first consider whether venue is proper in the Western District of Tennessee and then, if so, whether the proceedings should be transferred to the Eastern District of Tennessee.

### A. Motion to Dismiss for Improper Venue

Article III, § 2 of the United States Constitution sets the basic venue requirements for criminal prosecutions under federal law, as follows:

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

7

U.S. CONST. Art. III, § 2, cl. 3 (quoted in United States v. Lee
Williams, 274 F.3d 1079, 1083 (6th Cir. 2001)).  "The
[constitutional] guarantee [to a defendant] is for a trial in the
state and district where the offense was committed." Lee
Williams, 274 F.3d at 1083 (quoting United States v. O'Donnell,
510 F.2d 1190, 1192 (6th Cir. 1975)).  Federal Rule of Criminal
Procedure 18 further provides that:

> Unless a statute or these rules permit otherwise, the
> government must prosecute an offense in a district
> where the offense was committed.  The court must set
> the place of trial within the district with due regard
> for the convenience of the defendant and the witnesses,
> and the prompt administration of justice.

Fed. R. Crim. P. 18.

Under 18 U.S.C. § 3237(a), "any offense against the United
States begun in one district and completed in another, or
committed in more than one district, may be inquired of and
prosecuted in any district in which such offense was begun,
continued, or completed." 18 U.S.C. § 3237(a)(cited in United
States v. Scaife, 749 F.2d 338, 346 (6th Cir. 1984)).  Venue is
therefore proper in conspiracy prosecutions "in any district
where the conspiracy was formed or in any district where an overt
act in furtherance of the conspiracy was performed." Lee
Williams, 274 F.3d at 1083 (quoting Scaife, 749 F.2d at 346).[2]

---

[2] Because conspiracy is a continuous crime, "venue is proper
in any district along the way."  Lee Williams, 274 F.3d at 1083
(quoting United States v. Turner, 936 F.2d 221, 226 (6th Cir.
1991)).

"A conspiracy defendant need not have entered the district so long as this standard is met." United States v. Crozier, 259 F.3d 503, 519 (6th Cir. 2001)(quoting Scaife, 749 F.2d at 346).

In order to determine where venue may properly be located, the United States Court of Appeals for the Sixth Circuit applies a "substantial contacts" test. Lee Williams, 274 F.3d at 1084 (citing United States v. Estel Williams, 788 F.2d 1213, 1215 (6th Cir. 1986)). That test "takes into account a number of factors - the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding...." Id. (citing Estel Williams, 788 F.2d at 1215). The Court will consider the first and second factors - the site of the defendant's acts and the elements and nature of the crime - concurrently because the elements and nature of the crime of conspiracy determine the relevance of the site of defendant's acts. The Court will then analyze the third and fourth factors.

Rep. Newton first contends that the indictment does not specifically allege that a conspiracy was formed in the Western District of Tennessee. However, a conspiracy need not be formed within the Western District in order for venue to be proper there. Rather, venue is proper in the Western District if an overt act in furtherance of the conspiracy was performed there. Lee Williams, 274 F.3d at 1083 (quoting Scaife, 749 F.2d at 346).

9

With respect to the alleged overt acts in furtherance of the conspiracy, Rep. Newton first contends that venue is not proper in the Western District of Tennessee because all of the indictment's allegations involving him are alleged to have occurred either in Chattanooga, Cleveland, or Nashville, Tennessee.  However, venue is proper if an overt act in furtherance of the conspiracy was performed in the Western District, even if the Defendant never entered the district. Scaife, 749 F.2d 338, 346.

Rep. Newton next contends that venue is not proper in the Western District of Tennessee based upon the alleged actions of Mr. Love within the district.  The indictment alleges three acts that took place or originated within the Western District: (1) the August 20, 2004, meeting between Mr. Love and E-Cycle representatives in Memphis, Tennessee, during which Mr. Love indicated that E-Cycle would get more attention concerning the legislation that it wished to have passed if it had "gifts to bear," that he had worked in the past "bearing gifts" to legislators including Rep. Newton, that he would need approximately $15,000 to pay those legislators, and that Rep. Newton would need more money than some others (Indictment at 4, ¶ 2); (2) that on or about September 14, 2004, Mr. Love received a wire transfer of $6,500 from the Western District of Tennessee to his bank account in Chattanooga, Tennessee. (Id. at 5, ¶ 5); and

10

(3) the October 12, 2004, meeting between Mr. Love and an E-Cycle
representative in Memphis, Tennessee, during which the E-Cycle
representative gave Mr. Love an envelope bearing the initials
"C.N." and containing $1,000 for Rep. Newton (Id. at 6, ¶ 12.) -
an envelope that is alleged to have been in Rep. Newton's
possession at an October 13, 2004, meeting in Cleveland,
Tennessee with an E-Cycle representative (Id. at 6, ¶ 13), during
which Rep. Newton and the E-Cycle representative discussed the
bill that E-Cycle wished Rep. Newton to sponsor in the Tennessee
House of Representatives. (Id. at 6-7, ¶ 13.)

Rep. Newton contends that the August 20, 2004, meeting
occurred prior to the formation of any alleged conspiracy and
therefore that it cannot support the venue requirements.  Acts
that are merely prior and preparatory to a conspiracy do not
support venue. United States v. Berry, No. 93-5376, 21 F.3d 428,
1994 WL 100274 at *2 (6th Cir. Mar. 24, 1994).  Rep. Newton
contends that the August 20, 2004, meeting was prior and
preparatory to any alleged conspiracy because Mr. Love is alleged
to have stated during the meeting what he believed he needed to
pay legislators in the future to obtain benefits for E-Cycle.
The indictment does not specifically allege at what point the
conspiracy was formed.  In order to prove conspiracy, however,
"[p]roof of a formal agreement is unnecessary; a tacit or mutual
understanding among the parties is sufficient ...." Id. at *3

(citing <u>United States v. Hughes</u>, 891 F.2d 597, 601 (6th Cir. 1989)(noting that the "existence of a conspiracy may be inferred from the acts done with a common purpose")).  Accordingly, it is possible that the August 20, 2004, meeting was an overt act in furtherance of the alleged conspiracy between Rep. Newton and Mr. Love.  However, even assuming that the August 20, 2004, meeting was prior and preparatory to a conspiracy and therefore could not support venue, the Court finds that other acts alleged in the indictment support venue being proper in the Western District of Tennessee.

With respect to the October 12, 2004, meeting in Memphis, Tennessee, Rep. Newton contends that it does not support venue because it occurred in Memphis at the United States' insistence, acting through E-Cycle, and therefore worked only to artificially create venue in the Western District rather than to further the purpose of the conspiracy.  However, Rep. Newton's contention regarding the motivation for the meeting being held in Memphis is pure speculation.[3]  Even taking that contention as true, however, the facts alleged plainly indicate that the October 12, 2004, meeting furthered the alleged purpose of the conspiracy. Accordingly, the Court finds that the facts alleged in the

---

[3] During argument on Rep. Newton's motion to dismiss for lack of venue, the United States strongly denied that it had artificially created venue, and counsel for Rep. Newton conceded that he lacked any evidence to support that contention.  (See Transcript, July 25, 2005, telephone conference.)

indictment establish that an overt act in furtherance of the alleged conspiracy was performed in the Western District of Tennessee on October 12, 2004. Venue is therefore proper in the Western District of Tennessee. See Crozier, 259 F.3d at 519 (finding single overt act in furtheror of conspiracy committed within district sufficient to make venue proper); Lee Williams, 274 F.3d at 1083).

With respect to the third factor in the substantial contacts test - the locus of the effect of the alleged criminal conduct - the Court finds that this factor weighs in favor of venue being proper in the Western District. The effect of the alleged conduct - given that the allegations involve a conspiracy to commit bribery and extortion under color of official right by a sitting member of the Tennessee House of Representatives - would be felt equally by all citizens in all parts of the state of Tennessee. As for the fourth factor - the suitability of the district for fact-finding - the Court finds that the Western District presents no difficulty for fact-finding and therefore that this factor also counsels in favor of venue being proper in this district.

Accordingly, having considered the substantial factor test and other relevant law in light of the record and the parties' submissions, the Court finds that venue is proper in the Western

13

District of Tennessee.   Defendant's motion to dismiss the
indictment is therefore DENIED.


### B. Transfer of Venue

The Court next addresses Rep. Newton's contention that this
case should be transferred to the Eastern District of Tennessee
pursuant to Federal Rule of Criminal Procedure 21(b).   Rule 21(b)
provides that a case may be transferred to another venue, as
follows:

> Upon the defendant's motion, the court may transfer the
> proceeding, or one or more counts, against that
> defendant to another district for the convenience of
> the parties and witnesses and in the interest of
> justice.

Fed. R. Crim. P. 21(b).   The decision regarding whether to
transfer a case under Rule 21(b) is within the Court's
discretion.   Graham v. United States, 257 F.2d 724, 729 (6th Cir.
1958); United States v. Collins, No. 91-5215, 955 F.2d 45, 1992
WL 31302 at *4 (6th Cir. Feb. 20, 1992).

In Platt v. Minnesota Mining Co., the Supreme Court assumed,
without deciding, that ten factors may appropriately be
considered by a district court in determining whether to exercise
its discretion to transfer a case pursuant to Rule 21(b).   376
U.S. 240, 243-44 (1964); see also Collins, 1992 WL 31302 at *4
(finding no abuse of discretion by district court that denied

14

transfer pursuant to Rule 21(b) based upon analysis of Platt factors). Those factors include: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) any disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of place of trial; (9) the docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. Platt, 376 U.S. at 243-44. "It is within the district court's discretion to balance these factors and determine which factors are of greatest import." Collins, 1992 WL 31302 at *4 (citing 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL, § 344, at 275 (2d ed. 1982)).

Rep. Newton contends that all ten Platt factors weigh in favor of transferring this case to the Eastern District of Tennessee. In particular, Defendant contends that: he resides in Cleveland, Tennessee, which is in the Eastern District; his counsel are located in Chattanooga, Tennessee, which is also in the Eastern District and nearly five hours by automobile from Memphis, Tennessee; witnesses that he may call at trial reside in or near Cleveland, Tennessee; many of the events at issue took place in either Cleveland, Tennessee or in Nashville, Tennessee;

15

many documents and records may be located in the Eastern District or could easily be transferred there; he is the Director of Human Resources for a corporation located in Cleveland, Tennessee that requires him to supervise several employees; he will incur significant expenses in paying travel expenses for witnesses traveling from the Eastern District to the Western District; the Eastern District is a more accessible venue for his witnesses and counsel; the Eastern District has a smaller criminal case load than the Western District and therefore has a more favorable docket condition; and finally that other special elements - in particular, the allegedly weak support for venue in the Western District and the United States' allegedly insubstantial interest in maintaining venue in the Western District - support transfer to the Eastern District.

The United States counters that: almost all of its witnesses either reside in Memphis, Tennessee or outside the State of Tennessee and can more easily be accommodated in Memphis than Chattanooga; all records concerning the case are located in the Memphis, Tennessee area and all monitoring agents who would be needed to testify as to electronic intercepts and Title III materials are located within the Western District of Tennessee; many important events in this case took place in Memphis, Tennessee; and that Mr. Love has not requested a change of venue and therefore a transfer of venue would require Rep. Newton to be

tried separately, necessitating a duplication of the government's efforts and an inefficient use of judicial resources.

Upon consideration of the Platt factors in light of the record and the parties' contentions, the Court finds that the transfer of this case is not warranted for the convenience of the parties and witnesses and in the interest of justice under Rule 21(b).  Although Rep. Newton, his business, his counsel, documents relevant to his defense and witnesses who may testify on his behalf are all located in or near the Eastern District of Tennessee, the Court finds that these factors do not weigh in favor of transferring the case.  First, travel from Chattanooga or Cleveland, Tennessee to Memphis, Tennessee may be accomplished in a reasonable amount of time via automobile over interstate highways.  Accordingly, it will not be unduly burdensome for Rep. Newton to travel to Memphis for trial.  Additionally, the Court has thus far accommodated Rep. Newton and his counsel by allowing Rep. Newton to appear at certain pre-trial procedures by telephone, to which the United States has not objected.  Rep. Newton remains free to request that accommodation from the Court in the future.  Moreover, Rep. Newton chose to retain counsel located in Chattanooga rather than in Memphis, where he was indicted.

Although Rep. Newton will undoubtedly bear some expense regarding witnesses traveling from the Eastern District to the

17

Western District, the Court finds that the relative ease of travel between the locations means that the expense is not likely to be excessive and therefore that this factor does not weigh in favor of transferring venue. See Collins, 1992 WL 31302 at *4 (affirming denial of change of venue from Eastern District of Tennessee at Chattannooga to Middle District of Tennessee at Nashville where defendant and his counsel resided in Nashville, but the government attorney and grand jury investigation occurred in Chattanooga, Chattanooga was accessible to the defendant and his counsel since the cities were only two hours apart, and defendant failed to make a showing of inconvenience to witnesses). Additionally, because attending his trial will likely require him to be out of the office during business hours, any effect regarding Rep. Newton's supervisory responsibilities at the company for which he works will be similar regardless of the location of his trial. That factor therefore does not weigh in favor of transferring venue. Furthermore, the docket condition of the Western District is such that it can accommodate Rep. Newton's case[4] and Memphis provides an accessible venue for trial. Those factors therefore weigh in favor of retaining the case in the Western District.

_____

[4] In his motion, Rep. Newton notes that the average criminal caseload in the Western District of Tennessee is approximately 137.2 cases per judge, compared to 86.2 cases per judge in the Eastern District.

Moreover, the presence of the United States' witnesses and documents related to this case within the Western District of Tennessee weighs in favor of allowing the case to remain in the Western District.  In particular, materials related to electronic surveillance that are located within the Western District will be essential to this case and their location weighs in favor of trying this case in the Western District.

The Court further finds that certain special elements weigh against transferring the case - in particular, the concentration of the investigation and the electronic monitoring within the Western District of Tennessee as well as the possibility that judicial resources would be expended unnecessarily by trying Rep. Newton and Mr. Love separately in two different districts. Accordingly, having considered all of the <u>Platt</u> factors in light of the record and the parties' contentions, the Court finds that the transfer of this case is not warranted for the convenience of the parties and witnesses and in the interest of justice under Rule 21(b).  Rep. Newton's motion to transfer this case to the Eastern District of Tennessee is therefore DENIED.

## III. CONCLUSION

For the reasons stated, the Court finds that venue in this case is proper within the Western District of Tennessee and that a transfer of venue shall not be granted pursuant to Rule 21(b). Accordingly, Rep. Newton's motion to dismiss the indictment or,

19

in the alternative, to transfer venue to the Eastern District of Tennessee is DENIED.

So ORDERED this ___ day of August, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

20

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 41 in case 2:05-CR-20205 was distributed by fax, mail, or direct printing on August 1, 2005 to the parties listed.

---

Hugh J. Moore
SCHUMAKER WITT GAITHER & WHITAKER, P.C.
736 Market St.
1100 Suntrust Bank Bldg.
Chattanooga, TN 37402--260

Thomas Greenholtz
SHUMACKER WITT GAITHER & WHITAKER
1100 Sun Trust Bank Bldg
736 Market St
Chattanooga, TN 37402

Timothy R. DiScenza
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT